[No. 3075. Decided November 30, 1898.]

MISSISSIPPI VALLEY TRUST COMPANY and SEATTLE & LAKE WASHINGTON WATERWAY COMPANY, *Appellants*, v. W. D. HOFIUS, *Appellant*.

WATERWAYS — EXCAVATION AND FILLING IN TIDE LANDS — PART PERFORMANCE OF CONTRACT — LIEN — FORECLOSURE—REDEMPTION—INTEREST—HOW PAYABLE—ESTOPPEL.

Laws 1893, p. 241 (Bal. Code, §§ 4080-4089), which provides for the letting of contracts by the state for the construction of waterways and the filling in of tide lands, and authorizes the commissioner of public lands, upon the completion of any portion of the work capable of separate use for the purpose of navigation, to issue certificates of cost which shall be a lien upon the filled lands, when recorded in the county auditor's office, vests discretion in the land commissioner to determine what shall constitute the separate use for navigation, and does not require a provision in the contract itself regulating what should constitute a partial completion of the waterway capable of such separate use.

A purchaser of state lands, subject to a lien authorized by the state expressly provided for in the contract of purchase, cannot question the validity of the lien.

The improvement by the state of its own tide lands by the construction of waterways and filling the lands so as to raise them above high tide, although lying within the corporate limits of a city, is not a violation of art 7, § 9, of the constitution con-

ferring upon municipalities the power to make local improve-ments by special assessment of the property benefited.

Where the time for the payment of interest is fixed by con-tract or statute at a certain date, an installment of interest due at that date becomes an obligation distinct from that of the principal indebtedness, and, for failure to pay such interest, the law allows legal interest thereon as damages.

The act of March 9, 1893 (Laws 1893, p. 241), providing for the construction of waterways by private contract and granting liens upon the state's tide lands, authorizes such liens to be fore-closed in the manner provided by law for the foreclosure of other liens on real estate, and consequently permits the right of redemption from such sales in the same way as prevailed under the existing statutes governing the sale and redemption of mortgaged realty.

Under Laws 1893, p. 243, § 4 (Bal. Code, § 4083), providing that the lien in favor of the contractor excavating waterways and filling tide lands, should be payable by private owners of the land, in ten equal annual installments, dating from sale of the lands by the state, payable at the end of each year, "with accompanying interest on each of such installments," and under the construction placed on such statute by the land commis-sioner that the gross interest due at the maturity of an annual installment is payable with the installment, which construction was included in the certificates issued by the commissioner and thereby incorporated in the contract of purchase of such lands, a purchaser is estopped to deny the obligation to pay the gross amount of interest due at the time of paying each annual in-stallment of purchase price.

Appeal from Superior Court, King County.—Hon. ORANGE JACOBS, Judge. Reversed.

*Donworth & Howe, G. A. C. Rochester,* and *Julius F. Hale,* for plaintiffs:

To explain an equivocal and obscure expression in a statute or contract, resort may be had to well defined and known usages, as an aid in reaching a true interpretation. *Walls v. Bailey,* 49 N. Y. 464 (10 Am. Rep. 407) ; *South Bend Iron Works v. Cottrell,* 31 Fed. 254; *Bullock v. Finley,* 28 Fed. 514; *Robinson v. United States,* 13 Wall.

18—20 WASH.

363 (20 L. ed. 653); *Meriam v. Harsen,* 2 Barb. Ch. 232, 269; 1 Greenleaf, Evidence, §§ 292, 293; 1 Beach, Contracts, § 734.

The language of this statute and of the contract made under it is the language of a promissor. If there is any ambiguity in the language used, it must be construed against the party using it, that is, against the state and its grantees. *Evans v. Sanders,* 33 Am. Dec. 297; *Paul v. Travelers' Ins. Co.,* 112 N. Y. 472 (20 N. E. 347, 8 Am. St. Rep. 758, 3 L. R. A. 443); *Marvin v. Stone,* 2 Cow. 806; *Hoffman v. Aetna Fire Ins. Co.,* 32 N. Y. 405 (88 Am. Dec. 337); *White v. Smith,* 75 Am. Dec. 589. Where there is a doubt on the question of interest, the doubt is resolved against the promissor. *Brewster v. Wakefield,* 1 Minn. 352. Nor can respondent get any support from the old doctrine that grants by a state are strictly construed in favor of the state. This rule of construction in favor of the state never applied to grants based on a valuable consideration, for, in such cases, all ambiguities and uncertainties were resolved in favor of the grantee and promissee, as in the case of contracts between individuals. Further, the modern authorities favor a liberal construction in favor of the grantee in all cases, so as to carry out fully and liberally the legislative intent. 3 Washburn, Real Property (5th ed.), 202; *Hyman v. Read,* 13 Cal. 445; *Charles River Bridge v. Warren Bridge,* 11 Pet. 597 (9 L. ed. 773); *Garrison v. United States,* 7 Wall. 688 (19 L. ed. 277).

A grantee who assumes payment of an incumbrance is estopped to dispute the validity and amount of the incumbrance which he has assumed. Jones, Mortgages (5th ed.), §§ 736, 1491, and cases cited; *Brown v. Elwell,* 17 Wash. 442. Where the state is estopped, its grantee is estopped. *Rogers Locomotive Mach. Works v. American Emigrant Co.,* 164 U. S. 559 (41 L. ed. 552).

Even if this work were to be deemed a local improvement, within the meaning of the term as used in constitutions and statutes, the weight of authority is that the power to make local improvements vested in municipal authorities is not exclusive. Practically the only cases which hold it to be exclusive are those cited by defendant from the state of California. The legislature may make assessments for local improvements, without the interposition of any local authority. *Spencer v. Merchant,* 125 U. S. 345 (31 L. ed. 763); Cooley, Taxation (2d ed.), pp. 638-640.

The statute fixes the time when the principal matures, and also the time when the interest matures. The interest thereby becomes a distinct obligation, the time for payment of which is fixed by the statute. After the time of payment fixed by the statute has expired, the interest is a sum of money overdue and withheld by the debtor, upon which the law will assign legal interest as the measure of damages, just as it does on any sum of money withheld after maturity. *People v. Myers,* 21 N. Y. Supp. 79 (S. C. affirmed in 34 N. E. 372); *City of Aurora v. West,* 7 Wall. 82 (19 L. ed. 42); *Koshkonong v. Burton,* 104 U. S. 668 (26 L. ed. 886.); *Robertson v. Parrish,* 39 S. W. 646; *Bowman v. Duling,* 20 S. E. 567; *Hovey v. Edmison,* 22 N. W. 594; *Bledsoe v. Nixon,* 69 N. C. 89 (12 Am. Rep. 642); *Calhoun v. Marshall,* 61 Ga. 275 (34 Am. Rep. 99); *Mills v. Jefferson,* 20 Wis. 54; *Texas & Pac. Ry. Co. v. Marlor,* 123 U. S. 687 (31 L. ed. 303).

The right of redemption is a statutory right and exists only in the cases and to the extent expressly provided by statute. *Eldridge v. Wright,* 55 Cal. 531; *Knipe v. Austin,* 13 Wash. 189; *Hardy v. Herriott,* 11 Wash. 460.

*Ballinger, Ronald & Battle,* for defendant:

When the legislature, by virtue of the authority contained in § 9, art. 7, of the constitution, did vest corporate authorities with power to make local improvements by special assessment, such power became absolute and exclusive, and no power remained in the state, acting either through the legislature or any agency other than the municipal authorities, to authorize or contract for the making of improvements of a local nature; and, even independent of such constitutional provision, such improvement, being local in its nature, is one of the inherent powers existing in the municipality.   *Taylor v. Palmer,* 31 Cal. 252; *People v. Lynch,* 51 Cal. 15 (21 Am. Rep. 677); *Brady v. King,* 53 Cal. 44; *People v. Houston,* 54 Cal. 539.

Unless there is an agreement to that effect, interest is not payable before the principal on which it accrued.   11 Am. & Eng. Enc. Law, pp. 402-404.

The opinion of the court was delivered by

DUNBAR, J.—This action was brought to foreclose a lien on certain tide lands in the city of Seattle, arising under the provisions of ch. 99 of the Laws of 1893, p. 241 (Bal. Code, §§ 4080-4089), "An act prescribing the ways in which waterways for the uses of navigation may be excavated by private contract, providing for liens upon tide and shore lands belonging to the state, granting rights of way across lands belonging to the state." The complaint sets forth two causes of action, stating fully the facts under which the liens arise; the difference in the causes of action being simply in the description of the tracts of tide lands against which the lien is sought to be enforced. It appears by the complaint that on October 27, 1894, the state of Washington, by its duly authorized commissioner of public lands, entered into a written contract with Eugene Semple, said contract consisting of two parts,

both executed and delivered at the same time and as one transaction, one part being designated as "Contract No. 1," and the other part as "Supplemental Contract No. 1," and both constituting one contract, known as "Contract No. 1." Copies of the instruments composing this contract are attached to the complaint. After this contract was executed, Semple, for a valuable consideration, assigned and transferred the contract, and all his rights thereunder, to the appellant Seattle & Lake Washington Waterway Company, so that said company became substituted for Semple in the contract, for all purposes. Later, on February 23, 1895, another contract, known as "Contract No. 3," was made between the state, through its commissioner of public lands, and the waterway company. Contract No. 1 and contract No. 3 provide for the excavation of substantially the same waterway, but differ in the description of the lands which the contractor agrees to fill in and raise above high tide. Both contracts were entered into after due proceedings, by advertisement and otherwise, in full compliance with the provisions of the laws of the state on that subject. The waterway company began the work of excavating the waterway and filling in the tide lands according to the contract, and prior to the 24th of August, 1896, had filled and raised above high tide, in full compliance with the contract, the tide lands concerned in this controversy. On the date last named the commissioner of public lands issued to the waterway company the two certificates described in the complaint. They were filed in the office of the county auditor of King county on August 25, 1896, and duly recorded under the provisions of § 4 of the act above referred to, and by reason of said filing the waterway company acquired a lien for the amounts due and to become due under the provisions of said act. The certificates set forth the description of the lands which have been improved and the cost thereof. It further appears

by the complaint that, on February 8, 1897, the state of
Washington sold by contract to one R. W. Dearborn the
two tracts of tide lands above described, each of the tracts
being bought and contracted for by Dearborn separately
from any other tide lands, and tide land purchase con-
tracts, in the ordinary form, were duly executed on No-
vember 8, 1897, said Dearborn paying on each contract
the first installment of one-tenth of the purchase price.
Later Dearborn sold and assigned his interest to the appel-
lant and defendant Hofius, who is now the holder of the
contracts of purchase.   The complaint prays for a fore-
closure of the liens against the respective parcels of tide
lands for non-payment of principal and interest which fell
due February 8, 1898.   The court rendered judgment of
foreclosure.   The defendant appeared and demurred, and,
after the demurrer was overruled, answered.   Plaintiffs
demurred to the affirmative defenses in the answer, and this
demurrer was sustained.   Thereafter plaintiffs moved for
judgment on the pleadings against the defendant.   The
court thereupon rendered judgment in favor of the
plaintiffs and against the defendant.   Both parties ap-
pealed.

The questions to be considered here are purely of law.
The defendant's contention is that the judgment and de-
cision of the lower court was erroneous for the following
reasons:   (1) That the partial certificates mentioned in
plaintiff's complaint were not, and could not be, lawfully
issued, for the reason that the contract made with Semple
did not contain any provision or provisions regulating
what should be such partial completion of the contract as
would render such work capable of separate use for the
purpose of navigation, or contain any standard or data
from which such determination could be made, as pro-
vided by § 4 of said act of 1893 (Bal. Code, § 4083).
(2) Said act of March 9, 1893, is null and void and is in

conflict with § 9, art. 7, of the constitution of Washington, for the reason that under said constitutional provision the work completed could only be done and performed by the corporate authorities of cities, town and villages. (3) The decree of the court rendered was further erroneous, in that compound interest was allowed thereby; that is, that the interest upon the installment payable February 8, 1898, also bears interest from February 8, 1898.

We think, under the statute, the partial certificates were lawfully issued; that the contracts were drawn in substantial accord with the act; and that the act does not require the contracts to set forth what shall constitute a separate use for the purpose of navigation. This is a fact which we think, under the terms of the whole act, was intended to be left to the determination of the commissioner of public lands. The preceding §§ 1, 2 and 3, fully set forth what is essential to the contract, and § 4 simply sets forth what must be done to evidence the carrying out of the contract. It would be impracticable for the contract to contain all the provisions of the act. Again, this is a construction which the commissioner of public lands placed upon the act, and, under universal authority, such construction will receive the very highest consideration from the courts. Then, too, the filling and raising of the lots described in the complaint was completed and the certificates issued, prior to the purchase by the defendant's grantor, and the contract of purchase under which the defendant holds expressly provides that the purchase shall be subject to the lien. He assumed under that contract the obligation to pay this lien, and he cannot now be heard to deny its validity. *Brown v. Elwell,* 17 Wash. 442 (49 Pac. 1068).

We do not think there is anything in the second proposition, that the act of 1893 is unconstitutional; for at the time these waterway contracts were made the state was

the absolute owner of all the tide lands affected thereby. No appraisement or plat of the tide lands had been filed at that time, and the state's power to dispose of the lands was absolute and unlimited. We think the contracts were within the constitutional power of the state, even if the defendant were not estopped to deny the ownership of the state, his right in the premises being based on his purchase from the state.

Nor do we think, under modern authorities, that the third objection can be sustained, viz., that the court erred in allowing interest at seven per cent. per annum upon the installment of interest which fell due February 8, 1898. Under the statute, the interest would become a distinct obligation, the time for payment being fixed by the statute. This being true, the money which was due at that date was unpaid, the state had the benefit of it, and the law will allow legal interest as a measure of damages.

The plaintiffs have also appealed from the judgment of the court, and allege two errors: (1) That the court, instead of allowing the first installment of principal and interest on the whole principal up to the time that the first installment inured, simply allowed the installment of one-tenth of the principal and interest on that installment only; and (2) that the court decreed a right of redemption, and it is argued that redemption is a strictly statutory right and that the statute in this case does not confer it in the case of sales to enforce liens. But we do not think that we can sustain this objection. The language of the act is, "that such lien may be foreclosed in the manner provided by law for the foreclosure of other liens on real estate." While it may not be exactly a technical construction, we are satisfied that the intention of the legislature was, by the use of the words above quoted, that the foreclosure mentioned included the redemption which then existed in cases of foreclosure of real estate sold under exe-

cution of judgment or foreclosure of mortgage. The first alleged error involves simply the matter of the construction of the statute. One provision of § 4 (Bal. Code, § 4083) is that,

"upon the filing in the office of the county auditor of the county or counties in which such lands are situated, of such certificate of the commissioner of public lands, said contracting parties shall acquire a lien, and the same shall thereupon attach, for the amount specified in such certificate, with fifteen per cent. additional thereon, and interest on such amount and additional percentage from the date of such certificate at the rate of eight per cent. per annum until payment."

Further along in the same section is the following provision:

" The amount due on such lien, or any proportionate part thereof separately payable as above provided, shall be payable by any owner of said lands, or any part thereof separately owned, as the case may be, other than the state, in ten equal annual installments, the first installment at the end of the first year after the sale of such lands, or of such separate portion thereof, by the state; and the remaining installments, one at the end of each year thereafter, with accompanying interest on each of such installments, as hereinbefore provided," etc.

It will be seen that either construction might plausibly be placed upon this provision of the statute; that the words, "with accompanying interest on each of such installments," might mean interest on the installment which was paid or interest on all of the installments at the time of the payment of each installment. It is insisted by the plaintiffs that the court should take into consideration extraneous facts in aid of the construction of this statute, and, with some plausibility, it is urged that the legislature must have been aware of the customs governing the investment of large sums of money and of capitalists who furnish money for enterprises of this kind; that it is common

knowledge that provisions in such cases are always made for the annual payment of the interest on deferred payments; and that money could not be obtained for the purpose of making these public improvements unless such provisions were made. And again, that the language of the statute is the langauge of a promisor, and that, if there is any ambiguity in the language used, it must be construed against the party using it. Further, it appears that the construction that the interest was to be paid annually on all the installments was the construction which was placed upon this portion of the law by the land commissioner, and, as before said, courts will not, without the most satisfactory reason, overrule the construction placed upon laws by departmental officers on whom the law has imposed the duty of executing such statutes. In addition to this, the construction which the commissioner had placed upon this law was a matter of record at the time this purchase was made, for the certificate setting forth the description of land, in stating the manner of payment, was as follows:

" The amounts secured by this certificate and lien or any proportionate part thereof, separately payable as provided by the contract and act of the legislature above referred to and made a part thereof, shall be payable by any owner or owners of said above described lands, or any part thereof, separately owned, as the case may be, in ten equal installments, the first installment together with interest on the gross amount secured by this certificate from the date of this certificate to the date of payment of such installment, at the rate of eight per cent. per annum, at the end of the first year after the sale of such lands, or any separate portion thereof by the state; and the remaining installments, one at the end of each year thereafter, with accompanying interest on the gross amount remaining unpaid to date of such payment, at the rate of eight per cent. per annum."

This certificate places beyond question the fact that the

interest on the gross amount was to be paid at the time of each annual payment. The purchaser bought with reference to the provisions of this certificate. It became incorporated in his contract and he agreed to pay this amount, and, under the doctrine of *Brown v. Elwell, supra,* he is estopped from denying his obligation. In addition to this, in *Scholpp v. Forrest,* 11 Wash. 640 (40 Pac. 133), where the legality of this same certificate was brought in question, it was decided by this court that the certificate in all respects conformed to the provisions of the law under which it was prepared. This decision, we think, ought to be held *stare decisis,* so far as this proposition is concerned, and, for all the reasons announced, we think the judgment should have been given to the plaintiffs for the amount due on the annual payments and for the interest on the gross amount due, in conformity with the provisions of the certificate.

The judgment will be reversed, and the cause remanded with instructions to enter the judgment in conformity with this opinion.

SCOTT, C. J., and GORDON, ANDERS and REAVIS, JJ., concur.