[No. 5011.   Decided July 26, 1904.]

# SEATTLE & LAKE WASHINGTON WATERWAY COMPANY et al., Respondents, v. SEATTLE DOCK COMPANY, Appellant.[1]

STATUTES—TITLE—SUFFICIENCY—EXCAVATION OF WATERWAYS AND PROVISION FOR LIENS.   The title to Laws 1893, p. 241 (Bal. Code, § 4080), the main purpose of which is to provide for the excavation of public waterways by private contract, which is specified in the title, is broad enough to include a provision for liens for the work performed, as that is merely incidental to the main subject and a means of accomplishing the main purpose, and the act is not objectionable as embracing more than one subject, although the title also embraces the subject of such liens and the granting of rights-of-way across the lands, and might have been included in three separate acts.

TIDE LANDS—STATUTES—CONSTRUCTION OF ACT FOR EXCAVATION OF WATERWAYS—LIENS—CONSTITUTIONAL LAW—VESTED RIGHTS. Bal Code, §§ 4080 et seq., providing for the excavation of public waterways by private contract, does not confer power upon the land commissioner to encumber private property with liens for filling in such property against the owner's will, but the same intends to give such liens only where the state was the owner of the tide lands when the contract was entered into.

SAME—STATUTES—TITLE—SUFFICIENCY—POWERS OF LAND COMMISSIONER.   If such act gave such power, it would not be necessary to refer thereto in the title, as the title need not be a complete index to the act.

SAME — CONSTITUTIONAL LAW — DUE PROCESS OF LAW — STATE CONTRACT FOR EXCAVATION OF TIDE LANDS—RIGHTS OF SUBSEQUENT PURCHASERS.   The act of 1893, authorizing the excavation of public waterways by private contract, and providing for liens upon the filled in tide lands belonging to the state, and which the state afterwards sells, does not violate the state and federal constitutions, in that, by the foreclosure of such liens, it deprives the subsequent purchasers from the state of their property without due process of law, since the state could make any contract with reference to filling up its tide lands, and subsequent purchasers

1Reported in 77 Pac. 845.

take subject thereto, and are not entitled to notice or opportunity to be heard touching the improvements.

SAME—ABUTTERS ON TIDE LANDS—VESTED RIGHTS. Abutters, with only a preference right to purchase tide lands, have no vested rights therein, and are not entitled to notice or opportunity to be heard respecting the improvement thereof, contracted for by the state while the state is still the owner.

SAME—DECISION OF COMMISSIONER OF PUBLIC LANDS. In the absence of fraud, the decision of the commissioner of public lands upon the right of the contractor, excavating a public waterway under the act of 1893, to a certificate, is as conclusive upon subsequent purchasers as it would be upon the state, if the state were still the owner.

SAME—LOANING CREDIT OF STATE—STATE NOT LIABLE FOR IMPROVEMENTS. The act of 1893, authorizing the excavation of public waterways, and providing for liens upon the tide lands belonging to the state which are filled in under the contract, does not violate the state constitution, § 9, art. 12, and § 5, art. 8, prohibiting the loaning of the credit of the state in aid of any individual, where the act does not make the state liable for the improvements, nor to discharge the lien, but provides for a sale at not less than the appraised value, and the purchasers were bound to pay for the improvements, since the only remedy of the excavation company is to purchase the land at the appraised value.

SAME—CONTRACTION OF STATE DEBT. Such act does not violate § 3 of art. 8 of the state constitution, prohibiting the contraction of a state debt except for objects especially designated, nor without submitting the same to a vote of the people, since the state is not made liable for the improvement and is under no obligations to discharge the lien, and the creation of such lien upon state lands to be paid by the purchaser is not the creation of a state debt within the meaning of the constitution.

SAME—SPECIAL PRIVILEGES—COLLECTION OF TOLLS—SEPARABLE PORTION OF ACT NOT INVALIDATING THE BALANCE. The provision of the act of 1893, relating to the excavation of public waterways, which creates liens upon the state tide lands filled in under the contract, cannot be claimed to be invalid or contrary to § 22, of art. 12, and § 12, of art. 1, of the constitution, prohibiting monopolies and the granting of special privileges to any citizen, by reason of that part of the act granting to the waterway company the exclusive right to control the waterway and collect tolls, since such provision is a separable part of the act, and, if it fails, it

does not affect the portion relating to certificates and liens for the improvements.

SAME—TAKING PRIVATE PROPERTY FOR DEBTS OF PUBLIC CORPORA-TIONS.    Said act is not contrary to § 15 of art. 11 of the state constitution, providing that private property shall not be taken or sold for the payment of debts of public or municipal corporations except in the manner provided for by law for the collection of taxes, as the claim for liens for the work is not a debt of any such corporation.

Appeal from a judgment of the superior court for King county, Tallman, J., entered October 14, 1903, upon findings in favor of the plaintiff after a trial upon the merits before the court without a jury, foreclosing the lien of a waterway company for its improvement of tide lands.    Affirmed.

*Ballinger, Ronald & Battle,* for appellant.    The law under which plaintiff secured its contract was unconstitutional, because it embraced more than one subject, and subjects not embraced in the title.    Cooley, Const. Lim. (5th ed.), 96, 172, 178; 23 Am. & Eng. Enc. Law, 233, 234; *Percival v. Cowychee etc. District,* 15 Wash. 480, 46 Pac. 1035; *People v. Parks,* 58 Cal. 624; *In re Breene,* 14 Colo. 401, 24 Pac. 3; *In re Blodgett,* 89 N. Y. 392; *Grand Rapids v. Burlingame,* 93 Mich. 469, 53 N. W. 620; *Skinner v. Wilhelm,* 63 Mich. 571, 30 N. W. 311.    The act deprived appellant of his property without due process of law, because:    (1)    There is no provision for the giving of notice or opportunity for hearing, to which an owner is entitled.    *Hagar v. Reclamation Dist.,* 111 U. S. 701, 4 Sup. Ct. 663; *Zeigler v. South etc. R. Co.,* 58 Ala. 594; *Spencer v. Merchant,* 125 U. S. 345, 8 Sup. Ct. 921; *Ames v. Port Huron etc. Co.,* 11 Mich. 139, 83 Am. Dec. 731; *Chicago etc. R. Co. v. Minnesota,* 134 U. S. 418, 10 Sup. Ct. 467, 702; *Fallbrook Irr. etc. Co. v. Bradley,* 164 U. S. 112, 17 Sup. Ct. 56; *Bauman v. Ross,* 167 U. S. 548, 17

Sup. Ct. 966; *Davidson v. New Orleans,* 96 U. S. 97; *Missouri Pac. R. Co. v. State,* 164 U. S. 403, 17 Sup. Ct. 130; *Paulsen v. Portland,* 149 U. S. 30, 13 Sup. Ct. 750; *Norwood v. Baker,* 172 U. S. 269, 19 Sup. Ct. 187; *New Whatcom v. Bellingham Bay Imp. Co.,* 16 Wash. 131, 47 Pac. 236; *Snohomish County v. Hayward,* 11 Wash. 429, 39 Pac. 652; *Skagit County v. Stiles,* 10 Wash. 388, 39 Pac. 116; *Askam v. King County,* 9 Wash. 1, 36 Pac. 1097; *Violett v. Alexandria,* 92 Va. 561, 23 S. E. 909, 53 Am. St. 825; *Stuart v. Palmer,* 74 N. Y. 191; *Santa Clara County v. Southern Pac. R. Co.,* 18 Fed. 410; *Gamble v. McCrady,* 75 N. C. 509.    (2)  The method provided for determining the amount which appellant's lands are to pay is arbitrary, and not "due process of law."  *Bradley v. Fallbrook Irr. Dist.,* 68 Fed. 964; *Tide Water Co. v. Coster,* 18 N. J. Eq. 518, 90 Am. Dec. 634; *Norwood v. Baker, supra; Thomas v. Gain,* 35 Mich. 155; *Craig v. Philadelphia,* 89 Pa. St. 265; *Sears v. Boston,* 173 Mass. 71, 53 N. E. 138; *Dexter v. Boston,* 176 Mass. 247, 57 N. E. 379, 79 Am. St. 306; *Hutcheson v. Starrie,* 92 Tex. 685, 51 S. W. 848, 71 Am. St. 884; *Adams v. Shelbyville,* 154 Ind. 467, 57 N. E. 114, 77 Am. St. 484; *McKee v. Pendleton,* 154 Ind. 652, 57 N. E. 532; *Fay v. Springfield,* 94 Fed. 409; *Loeb v. Columbia Tp.,* 91 Fed. 37; *Charles v. Marion,* 98 Fed. 166; *Cowley v. Spokane,* 99 Fed. 840. (3)  The act delegates legislative or judicial power, or both, to the executive department.  *People v. Parks, supra; Territory ex rel. Kelly v. Stewart,* 1 Wash. 98, 23 Pac. 405, 8 L. R. A. 106; *State v. Womack,* 4 Wash. 19, 29 Pac. 939; *People's Railroad v. Memphis Railroad,* 77 U. S 38; *Bank of U. S. v. Earle,* 13 Peters 595, 10 L. Ed. 311; *Owensboro & N. R. Co. v. Todd,* 91 Ky. 175, 15 S. W. 56; *Winters v. Hughes,* 3 Utah, 433, 24 Pac. 761; *Maxwell v. State,* 40 Md. 273; *Fogg v. Union Bank,* 1 Baxter

(Tenn.) 435; *Clark v. Port of Mobile,* 67 Ala. 217; *Shumway v. Bennett,* 29 Mich. 463. (4) The act is for a private purpose; or, if for a public purpose, it is at the expense of private individuals, and hence void. *Loan Ass'n v. Topeka,* 20 Wall. 655, 22 L. Ed. 455; *Hanson v. Vernon,* 27 Iowa 28; *People v. Salem,* 20 Mich. 452; *Sharpless v. Mayor of Philadelphia,* 21 Pa. St. 147, 59 Am. Dec. 759; *Coster v. Tide Water Co.,* 18 N. J. Eq. 54; *Kean v. Driggs Drainage Co.,* 45 N. J. L. 91; *Wurts v. Hoagland,* 114 U. S. 606, 5 Sup. Ct. 1086; *Jarrott v. Moberly,* Fed. Cas. No. 7223; *Garland v. Board of Revenue,* 87 Ala. 223, 6 South. 402; *Whiting v. Sheboygan etc. R. Co.,* 25 Wis. 167; 20 Am. & Eng. Enc. Law (2d ed.), 1090.

*Sachs & Hale,* for respondents.

MOUNT, J.—This action was brought by respondents to foreclose certain liens on tide lands in the city of Seattle. The liens arose under the provisions of chapter 99 of the laws of 1893, page 241 (Bal. Code, §§ 4080-4089), entitled, "An act prescribing the ways in which waterways for the uses of navigation may be excavated by private contract, providing for liens upon tide and shore lands belonging to the state, granting rights-of-way across lands belonging to the state."

The complaint contains five causes of action, each cause being based upon a lien upon a separate tract of land. The complaint alleges, in substance, that on October 27, 1894, the state of Washington, by its duly authorized commissioner of public lands, entered into a written contract with Eugene Semple, for the excavation of a waterway and filling in certain tide lands described (a copy of the contract is attached to the complaint); that, after the execution of the contract, Semple, for a valuable consideration, assigned and transferred the said contract, and all his

rights therein, to respondent Seattle & Lake Washington Waterway Company, so that said company became substituted for the said Semple in the contract for all purposes; that the contract was entered into after due proceedings by advertisement and otherwise, in full compliance with the provisions of the laws of the state, which proceedings are fully set out; that the respondent waterway company began the work of excavating the waterway and filling in the tide lands, according to the contract, prior to the dates of the certificates sued upon, and had filled in and raised above hightide, in full compliance with the contract, the tide lands upon which it is sought to foreclose the liens herein; that, on the dates of the certificates, the commissioner of public lands issued to the waterway company the certificates described, and which are attached to and made a part of the complaint, and which contain a description of the lands improved, and the cost of the improvements; that these certificates were filed in the office of the auditor of King county immediately after their execution, and were duly recorded, under the provisions of § 4 of the act above referred to; that, by the filing of said certificates, the waterway company acquired a lien upon the said lands for the amount due, and to become due, upon the said certificates, under the provisions of said act; that afterwards the waterway company, for value, sold, assigned, and transferred and delivered to respondent Morris & Whitehead, Bankers, a corporation, the said certificates and all right, title, and interest therein; that, subsequent to the making of the contract above mentioned between the state of Washington and Eugene Semple, and subsequent to the assignment thereof by Semple to the Seattle & Lake Washington Waterway Company, the appellant acquired from the state of Washington the tide lands upon which liens are sought to be enforced;

that the deed from the state, for the lands described in the complaint, contained the following provision: "Subject, however, to any lien or liens that may arise or be created in consequence of, or pursuant to, the provisions of the act of the legislature of the state of Washington, entitled, 'An act prescribing the ways in which waterways for the uses of navigation may be excavated by private contract, providing for liens upon tide or shore lands belonging to the state, granting rights-of-way across lands belonging to the state,' approved March 9, 1893;" that certain installments on the certificates are long past due and unpaid. The prayer is for a foreclosure of the liens.

Defendant Hofius appeared, and disclaimed any interest in the lands. Appellant Seattle Dock Company appeared, and filed a general demurrer to the complaint, which demurrer was overruled. It then filed an answer, denying certain allegations, and pleaded six affirmative defenses, substantially as follows: (1) That, under the act of the legislature of the state, approved March 26, 1890, the owners of uplands in front of which these tide lands are situated, or the improvers thereof, duly applied for the purchase of the same, which applications were allowed and the contracts of purchase from the state issued and executed, to all of which the appellant, by mesne conveyances, has become the owner; that the said act of 1893, referred to in the complaint, is unreasonable and contrary to the federal and state constitutions in certain respects set forth in said defense, and that its passage was an exercise of power prohibited by the fourteenth amendment to the federal constitution. (2) The contract set forth was not in conformity with the act, but was contrary thereto, in respects set forth in said defense, and that said contract was the taking, or attempting to take, defend-

ant's property without just compensation, and is the depriving of defendant of its property without due process of law, contrary to the federal and state constitutions, and that, prior to the filling in of said lands, the defendant forbade the Seattle & Lake Washington Waterway Company from filling in the same. (3) That the certificates issued, and attempted to be foreclosed, are null and void in that the land commissioner had no jurisdiction to issue the same. (4) That the lots, included within the description set forth in the contract, of tide lands which the contractor was to fill were owned by many and divers persons; that the contractor has entered into contracts with certain of these owners, whereby said owners' lots and tracts should not be filled under the contract but should be exempt therefrom. (5) That the contractor has contracted with other owners of lots, included within said description of tide lands, by which said contractor agreed to fill, and is now filling said owners' lands, in manner and upon terms as agreed upon with said owners, and different from the manner and terms mentioned in the contract with the state. (6) That the contractor did not comply with the terms and conditions of the contract with reference to bulkheads, but violated the same, and constructed bulkheads in a manner different from, and of a different material from, that provided in the contract, which manner of construction and materials used were inferior in every respect to the manner of construction and materials prescribed.

The plaintiff demurred to these affirmative separate defenses, on the ground that none of them stated facts sufficient to constitute a defense. These demurrers were sustained, and defendant refused to plead further. Upon a trial of the issues made by the denials of defendant, the

facts were stipulated, and the court entered a decree fore-
closing the liens for the amount prayed in the complaint.

The appellant assigns error upon the orders of the trial
court denying the demurrer to the complaint, and in sus-
taining the demurrers of the plaintiff to the affirmative
defenses of the defendant. It is first urged that the act
creating the liens is void because it embraces more than
one subject, as shown both by the title and by the act
itself. The title of the act is as follows, "An act prescrib-
ing the ways in which waterways for the uses of naviga-
tion may be excavated by private contract, providing for
liens upon tide and shore lands belonging to the state,
granting rights-of-way across lands belonging to the state."
This title is no doubt broad enough to include three
separate, independent subjects of legislation, but, when
we come to examine the act itself, we find that the real
subject or purpose of the act is the excavation of public
waterways by private contract. The liens and rights-of-
way provided for are merely incidental to the main sub-
ject, and are special only to this class of contracts. They
are ends or means to the accomplishment of the main pur-
pose of the act, and are not independent subjects. The
act is therefore not void upon the ground urged.

It is next argued, that there is nothing in the title of
the act indicating the powers conferred upon the land
commissioner; that power is conferred upon the land com-
missioner to incumber private property with liens for the
filling in of such property, against the owner's will. In
the first place, we do not think the act is capable of the
construction which appellant seeks to place upon it. The
act intends, no doubt, to give a lien for filling in lands
owned by the state on March 9, 1893, where a contract
has been entered into while the state was owner of the
land, but the act does not give a lien upon lands where

the contract is entered into after the state has parted with
its title thereto.  But, if the act is susceptible of the con-
struction placed upon it by appellant, it is not necessary
to the validity of it that the powers and duties of the land
commissioner shall be stated in the title.  The office of the
title is to call attention to the subject matter of the act,
which must be looked to for a full description of the
powers and duties conferred.  *Lancey v. King County,* 15
Wash. 9, 45 Pac. 645, 34 L. R. A. 817.  It is not re-
quired that the title of the act shall be a complete index
to the act.

Appellant next insists that the act is in conflict with
§ 3, art. 1 of the state constitution, and the fourteenth
amendment to the constitution of the United States, which
declare that no person shall be deprived of property with-
out due process of law.  It is argued that this act deprives
appellant of its property without due process of law in
four particulars, viz.:   (1) It does not afford the owner
any notice or opportunity to be heard touching the im-
provements; (2) the method provided by the act for de-
termining the amount which appellant's lands are to pay
is arbitrary, and contrary to the constitutional provision
above named; (3) the act is a delegation of legislative
and judicial power to a branch of the executive depart-
ment; (4) the act is an excess of legislative power and is
for a private purpose, or, if for a public purpose, then
it imposes burdens upon a small locality for the benefit
of the whole public.  One hundred and sixty pages of
appellant's brief are taken up in discussing these four
propositions.  The general principles laid down and dis-
cussed, and the authorities cited in the brief, are no doubt
correct, when applied to a state of facts where the state
itself is not the owner of the land; but, in this case, it is
conceded that the state was the owner of all the tide lands

in controversy at the time the act was passed, and at the time the contract to fill the same was entered into. This being true, the state could enter into any kind of a contract for filling the lands, at any price, and upon any terms. It could also designate some officer to accept the work, when such officer should deem it completed according to the contract. It could afterwards sell the land, and the purchaser would take subject to all the terms and conditions of the contract, and this is what the state did. At the time the act was passed and the waterway contract entered into, the state was the sole and exclusive owner of the lands. Appellant had no interest in any of them. Appellant's grantors had only a preference right to purchase. They had no vested or other interest. *Allen v. Forrest,* 8 Wash. 700, 36 Pac. 971, 24 L. R. A. 606; *Mississippi Valley Trust Co. v. Hofius,* 20 Wash. 272, 55 Pac. 54. They were, therefore, entitled to no notice except such as is provided by the act or the contract. When they purchased the land from the state, they took with notice of the contract, and all the terms and conditions thereof. The commissioner of public lands is made the judge of when the contractor is entitled to a certificate, and, in the absence of fraud, his decision is conclusive upon the appellant, as it would be upon the state if the state were still the owner. *Scholpp v. Forrest,* 11 Wash. 640, 40 Pac. 133; *Mississippi Valley Trust Co. v. Hofius, supra.* For these reasons there is no question of due process of law or want of notice in the case.

It is next argued that the act is in violation of § 9 of art. 12, and of § 5, of art. 8 of the state constitution, which declares that, "The credit of the state shall not in any manner be given or loaned to or in aid of any individual, association, company, or corporation." We are unable

to see that this act in any manner gives the credit of the state to the enterprise. It is true that certain tide lands are authorized to be filled in, and at a stated price, but the state is not bound to pay even this price. The lands were to be appraised and not sold for less than the appraised price, but the purchasers of these lands were required to take notice of the lien created by the cost of filling the same, and were bound to pay for the improvements. So that no aid or credit was given by the state directly or indirectly to the waterway company. The state was not even liable to discharge the lien. It fixed the price of the land without the improvements, and any person qualified to purchase was at liberty to do so. It is argued that the certificates of liens have the state's land back of them, but this is only true after the state has sold the lands, and then the purchaser takes with notice of the lien and the improvements, which he impliedly, at least, agrees to discharge. If preference right purchasers did not see fit to pay the state the appraised value of the land, and, in addition thereto, pay the waterway company for the improvements, they were under no obligation to purchase. In the event that the state did not sell the land, the only remedy of the waterway company was to purchase the land from the state at the appraised price before the expiration of the lien. While it may have been an advantage to the waterway company to be able to purchase at the appraised price in case preference right purchasers did not do so, we fail to see that the credit of the state was thereby loaned or in any manner given to the waterway company.

It is next argued that the act is in violation of § 3 of art. 8 of the state constitution, which provides that, "No debts shall hereafter be contracted by or on behalf of the state, unless such debts shall be authorized by law for some single work or object to be distinctly specified therein.

. . . No such law shall take effect until it shall at a general election have been submitted to the people and have received a majority of all the votes cast for and against it at such election," etc. It is clear from what we have said above that this is not a debt created or contracted by or on behalf of the state. By the terms of the act and the contract, the state is not liable for any improvements upon the lands. Nor are the state's lands liable therefor while they remain the property of the state. The lands become liable only after the state has parted with all its interest. The purchaser from the state takes the title with notice, and agrees to pay the claim of the waterway company for improvements. If this claim may be said to be a debt, it is not such a debt as is meant by the provision named.

It is next argued that the act is contrary to § 12 of art. 1, which declares that, "No law shall be passed granting to any citizen, class of citizens or corporation other than municipal privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations;" and § 22 of art. 12, which declares that monopolies shall not be allowed in this state. It is said that, because the act allows the respondent waterway company to erect locks in the waterway, and to exercise exclusive control thereof, and collect toll for its own private gain, this is a special privilege and a monopoly. Even if this contention is correct, it does not affect this case, because this is a separable part of the act, and, if this part fails, the portion relating to the certificates would not necessarily fail. Hence, it is unnecessary in this case to decide this question.

Appellant further claims that the act is contrary to § 15 of art. 11, which provides that private property shall not

be taken or sold for the payment of corporate debts of any public or municipal corporation except in the mode provided by law for the levy and collection of taxes. As we have seen above, this is not a debt of any public or municipal corporation. It is no debt at all, until some one purchases the land, and thereby assumes it, and agrees to pay for the improvements which the state, as owner, has permitted the waterway company to place upon the lands. It then, and for that reason, becomes a debt of the purchaser. Hence this provision of the constitution is not violated.

The remaining questions presented by appellant are, that the contract is not in conformity with the act in a number of respects, and that the commissioner of public lands had no jurisdiction to issue the certificates sued on, because the certificates are not in conformity with the act. All these questions were settled by this court in *Scholpp v. Forrest,* 11 Wash. 640, 40 Pac. 133, and *Mississipp Valley Trust Co. v. Hofius,* 20 Wash. 272, 55 Pac. 54. We shall therefore not notice them further.

There is no error in the record, and the judgment is affirmed.

FULLERTON, C. J., and HADLEY, ANDERS, and DUNBAR, JJ., concur.